IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


CHRISTOPHER ROY HOFFMAN,                    No. 2:18-cv-00720-HZ

        Plaintiff,                    OPINION & ORDER

    v.

COLLETTE PETERS, JUDY GILMORE,
JASON BELL, JOSHUA PATTERSON,
GREG WILSON, JOSEPH GODEK, MIKE
MCELROY, MATTHEW LYONS, JIM
MOORE, DAVID PLATT, ROBERT JONES,
ALBERT NASBY, WENDY BLEVINS,

        Defendants.


Christopher Roy Hoffman
2889 S.E. Hillside Ct. #805
Milwaukie, OR 97222

    Pro Se Plaintiff

Ellen Rosenblum
Attorney General
Michael R. Washington
Senior Assistant Attorney General
OREGON DEPARTMENT OF JUSTICE
1162 Court Street NE
Salem, OR 97301

    Attorneys for Defendants

HERNÁNDEZ, District Judge:

Pro Se Plaintiff Christopher Roy Hoffman brings this civil rights action under 42 U.S.C. § 1983 against Defendants Collette Peters, Judy Gilmore, Jason Bell, Joshua Patterson, Greg Wilson, Joseph Godek, Mike McElroy, Matthew Lyons, Jim Moore, David Platt, Robert Jones, Albert Nasby, and Wendy Blevins. Plaintiff alleges Defendants violated his Eighth Amendment rights when Defendants did not provide him with a shower for over 48 hours after exposure to OC spray. Plaintiff and Defendants now move for summary judgment. For the reasons below, the Court denies Plaintiff's motion and grants in part and denies in part Defendants' motion.

## BACKGROUND

Plaintiff entered the custody of the Oregon Department of Corrections ("ODOC") on August 6, 2015, and was housed at Snake River Correctional Institution ("SRCI") from September 2, 2015 to August 9, 2017. Blevins Decl. ¶ 3, ECF 40. At the time of the events at issue in this case, Defendants Patterson, Wilson, Godek, McElroy, Lyons, Moore, Platt, Jones, Nasby, and Blevins were all correctional officers employed at SRCI. Am. Compl. at 2, ECF 19. Defendants Gilmore and Bell were both assistant superintendents at SRCI in charge of supervision of the segregated housing unit, and Defendant Peters was the director of ODOC. *Id.* at 3.

On July 26, 2016, at about 12:30pm, Plaintiff was one of approximately 35 inmates involved in a dining room riot at SRCI. First Hoffman Decl. Ex. 1 at 1, ECF 34. Correctional staff responded to the incident and deployed oleoresin capsicum ("OC" or "pepper") spray to stop the fight. *Id.* at 2. Plaintiff was sprayed with OC spray by correctional staff, who then escorted Plaintiff to the Disciplinary Segregation Unit (DSU) where he was handcuffed to a wall. *Id.* Plaintiff was evaluated by a sick call nurse. *Id.* at 3; DiGiulio Decl. ¶ 5, Att. 1 at 8, ECF 39.

The nurse noted in medical records that Plaintiff denied injury and had been sprayed in the face. DiGiulio Decl. ¶ 5, Att. 1 at 8. Plaintiff alleges that he told the nurse he was burning alive and needed a shower and the nurse responded that a shower would be provided soon. Am. Compl. at 4. Plaintiff was provided with clean clothes and a wet towel to decontaminate upon entering the DSU along with the 34 other inmates who had either been sprayed or exposed to OC spray. First Hoffman Decl. Ex. 1 at 3. Plaintiff alleges he complained of horrific burning and pain to officers and was told he would get a shower soon. Am. Compl. at 4.

Shortly thereafter, Plaintiff was placed in a cell in Unit B of the DSU ("DSB"). Am. Compl. at 4. He alleges that he complained to Defendants Patterson and Wilson that he was in pain and had yet to receive a shower. *Id.* He requested a shower and was denied. *Id.* Later, after swing shift officers arrived, he complained to Defendants Godek and McElroy that he had been sprayed, was "burning alive," and had yet to be decontaminated. *Id.* at 4–5. He requested a shower from both officers and was denied. *Id.* at 5. He contends that he spent the whole night "suffering horrific burning." *Id.* He attempted to decontaminate by splashing water from the sink in his cell onto himself, but the spray ran off "into other areas to make matters worse." *Id.* The next morning, he asked day shift officers Defendants Wilson and Lyons for a shower but was ignored. *Id.* at 5–6. He also asked to speak to a sergeant, but Defendants never contacted one. *Id.* at 6.

On July 27, he was transferred to another cell in Unit C of the DSU ("DSC"). First Hoffman Decl. Ex. 1 at 4. Showers were conducted for the side of DSC opposite Plaintiff's cell. *Id.* at 4–5. Defendant told Defendants Blevins, Platt, Moore, and McElroy that he had been sprayed and had yet to receive a shower. Am. Compl. at 6. Defendants Blevins and Platt responded with comments like "that sucks" and "yea that spray is no joke" but told Plaintiff he

would not receive a shower until the following day. *Id.* Again, Plaintiff's request for new clothes, a towel, and bedding was denied. *Id.* Plaintiff suffered a second night of horrible pain. *Id.* at 7. He alleges that the spray was in his skin, that his "eyeballs felt like they were on fire and melting," and that his "eyelids were sticking to his eyeballs like glue." *Id.* "It felt like Plaintiff was cooking alive." *Id.* His clothing and sheets were contaminated, so "Plaintiff was constantly burning no matter what he did." *Id.*

On July 28, 2016, Defendants Jones and Nasby began conducting showers on Plaintiff's side of DSC for the upper tier. *Id.* Plaintiff's cell was on the bottom tier. *Id.* Plaintiff asserts that he complained to both Defendants Jones and Nasby that he was suffering from the OC spray. *Id.* He again requested a shower, and Defendants stated he would receive one when the next shift arrived. *Id.* Plaintiff finally received a shower later that day, over 48 hours after being sprayed. *Id.* at 8; First Hoffman Decl. Ex. 1 at 5. Defendants assert that they did not have the opportunity to deviate from the set shower schedule in DSU during this time because of the influx of 35 inmates from the July 26 riot and the restrictions used in DSU, such as two person escorts. First Hoffman Decl. Ex. 1 at 9.

Plaintiff submitted his first formal grievance on August 11, 2016, to complain that he was denied a shower after being sprayed with OC spray. First Hoffman Decl. Ex. 6. Lieutenant Jantz responded a few weeks later, finding that the use of force and decontamination complied with current training and standards and noting that services may be limited or suspended during a major disruption. First Hoffman Decl. Ex. 7. On September 4, Plaintiff appealed his grievance. First Hoffman Decl. Ex. 8. On October 5, 2016, Defendant Gilmore responded to Plaintiff's grievance appeal by explaining that: "During a major disruption of the institution, services may be limited or suspended based on institutional need. While not getting the opportunity to shower

on your time line must have been frustrating, you did get a shower at the institution's earliest convenience." First Hoffman Decl. Ex. 9. Plaintiff filed a second grievance appeal and received a final response on October 27, 2016, that reaffirmed Defendant Gilmore's decision. First Hoffman Decl. Exs. 10, 11.

Plaintiff subsequently filed this lawsuit. Plaintiff alleges Defendants violated his Eighth Amendment right against cruel and unusual punishment when Defendants refused to provide him with a decontamination shower 50 hours after exposure to OC spray. Am. Compl. at 9. He asserts Defendants failed to abide by administrative rules, ODOC policy, and state law, and that Defendants' actions were "malicious, . . . sadistic, intentional, diliberate [sic], reckless and calleous [sic]." Id. In addition, Plaintiff claims that Defendant Peters, Bell, and Gilmore are liable for the conduct of their co-defendants by failing to adequately supervise, train, and discipline their subordinates, which was the direct and proximate cause of his injuries. Id. at 10–13. Plaintiff seeks a declaratory judgment, compensatory damages of $150,000, and punitive damages in the amount of $300,000. Id. at 13–14.

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927-28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Summary judgment is improper where divergent ultimate inferences may reasonably be drawn from the undisputed facts." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (internal quotation marks omitted); *see also Int'l Union of Bricklayers & Allied Craftsman Local Union No. 20, AFL-CIO v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985) ("Even where the basic facts are stipulated, if the parties dispute what inferences should be drawn from them, summary judgment is improper.").

## DISCUSSION

Plaintiff alleges that in failing to decontaminate him for 50 hours after exposure to OC spray Defendants violated the Eighth Amendment. Plaintiff brings his claim under 42 U.S.C. § 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]

"To state a claim under § 1983, a plaintiff must both (1) allege the deprivation of a right secured by the federal Constitution or statutory law, and (2) allege that the deprivation was committed by a person acting under color of state law." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

Plaintiff and Defendants now both move for summary judgment. Plaintiff moves for summary judgment on the merits of his claims against Defendants Patterson, Wilson, Godek, McElroy, Blevins, Moore, Platt, Jones, and Nasby, arguing that the undisputed facts establish that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment when they denied him the opportunity to shower for 50 hours after he was exposed to OC spray. Pl. Mot. Summ. J. 1, ECF 34. Defendants move for partial summary judgment and ask the Court to dismiss Defendants Blevins, Bell, Gilmore, Peters, and Jones because they were not personally involved in the alleged constitutional deprivations at issue here and cannot be liable under a theory of *respondeat superior*. Def. Mot. Partial Summ. J., ECF 38.

Because a reasonable jury could conclude that Defendants were not deliberately indifferent to Plaintiff's serious medical need, the Court denies Plaintiff's motion. The Court, however, grants in part and denies in part Defendants' motion. There is a dispute of fact as to whether Defendant Jones was personally involved in the underlying constitutional deprivation, but Plaintiff has not presented evidence that Defendants Blevins, Bell, Gilmore, and Peters were personally involved in the alleged constitutional violation. Accordingly, Defendants Blevins, Bell, Gilmore, and Peters are dismissed from this case.

I.        **Plaintiff's Motion for Summary Judgment**

Plaintiff moves for summary judgment as to Defendants Patterson, Wilson, Godek, McElroy, Blevins, Moore, Platt, Jones, and Nasby[1] on the merits of his Eighth Amendment claims. A prison official violates an inmate's Eighth Amendment rights if they are "deliberately indifferent" to the inmate's "serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 103–05 (1976). Thus, to establish an Eighth Amendment claim, Plaintiff must show: (1) that he had a "serious medical need" and (2) that Defendants were deliberately indifferent to that need. *Id.* at 104. "[A] serious medical need is present whenever the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain . . . . " *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (internal citations omitted).

Deliberate indifference may be satisfied by showing: "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997)). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.'" *Jett*, 439 F.3d at 1096 (quoting *McGuckin*, 974 F.2d at 1059). For Plaintiff to succeed, he must show Defendants acted with more than "mere

---

[1] Plaintiff also moves for summary judgment against Defendant Saxton. However, Defendant Saxton is not named in Plaintiff's Amended Complaint. *See* Pl. Resp. Def. Mot. Summ. J. 2 ("Plaintiff concedes that he failed to name Defendant (Saxton) in his new amended complaint so the court has valid grounds to dismiss this defendant."). Accordingly, the Court declines to address claims against Defendant Saxton.

negligence." *Clement*, 298 F.3d at 904 (citing *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998)). Rather, "the official's conduct must have been 'wanton,' which turns not upon its effect on the prisoner, but rather, upon the constraints facing the official." *Id.*

In *Clement v. Gomez*, bystander inmates were exposed to pepper spray vapors when pepper spray was administered in a neighboring cell to stop a violent fight. 298 F.3d at 902. Prison officials did not provide the bystander inmates with decontamination showers until four hours after the incident. *Id.* The defendants moved for summary judgment on the plaintiffs' Eighth Amendment claims, arguing that they were not deliberately indifferent to the bystander inmates' serious medical needs. *Id.* at 901. The Ninth Circuit first found that the plaintiffs' submissions—which documented the painful effects of pepper spray—satisfied the objective component of the Eighth Amendment test by demonstrating the presence of a serious medical need. *Id.* at 904. The court then found that the plaintiffs might be able to show that the defendants were subjectively aware of the risk of serious injury and therefore deliberately indifferent in denying the plaintiffs showers and medical attention during the four-hour period. *Id.* at 905. The court emphasized that the officers themselves were coughing and stepped outside for fresh air, and that the prisoners alleged that they made repeated requests for attention; were coughing, gaging, or choking; and complained of breathing problems, pain, and asthma attacks. *Id.* at 905. The court therefore concluded the defendants were not entitled to summary judgment on the plaintiff's Eighth Amendment claim.

Similarly, here, the effects of the pepper spray may qualify as a "serious medical need." *See Clement*, 298 F.3d at 904. Based on the record, however, a reasonable jury could find that Defendants lacked the requisite mental state. First, Defendants took various precautions after Plaintiff was sprayed with OC spray in compliance with administrative regulations. Plaintiff was

provided a damp towel for his eyes. First Hoffman Decl. Ex. 1 at 3. Plaintiff was examined by a nurse and observed for 30 minutes by officers following exposure. DiGiulio Decl. ¶¶ 5–6. Upon admission to DSU, he was given clean clothing and a cell with access to water. First Hoffman Decl. Ex. 1 at 3; Am. Compl. at 5. Such actions were consistent with Department of Corrections regulations, which provide: "Those affected by a chemical agent shall be permitted to wash their face, eyes, and other exposed skin areas, as soon as possible after the chemical agent has been used." OAR 291-013-0104(5)(f). These regulations further specify that inmates exposed to a chemical agent shall be provided with clean clothing, an examination by a health care official, observation in the half hour following application of the chemical agent, and "a shower as soon as time and circumstance allows." *Id.* at (h)–(k). Though not definitive, Defendants' precautionary measures and compliance with administrative regulations suggest that they lacked the requisite state of mind. *See Jones v. Gomez*, No. C 04-3034 SI(PR), 2005 WL 3001866, at *4–6 (N.D. Cal. Nov. 8, 2005) ("Although prison officials cannot avoid liability in every case by blindly following a prison's policy because the policy itself may be infirm, following the policy here suggests a reasonable choice to deal with pepper spray.").

Second, the record reflects that Defendants faced competing concerns throughout the time Plaintiff requested a decontamination shower. *See Clement*, 298 F.3d at 905 n.4 ("These competing tensions—the prisoners' need for medical attention and the government's need to maintain order and discipline—may be important to the resolution of whether the officials had the requisite subjective intent."); *see also Peralta*, 744 F.3d 1076, 1082 (9th Cir. 2014) ("[T]he Court *has* told us that prison officials aren't deliberately indifferent to a prisoner's medical needs unless they act wantonly, and whether an official's conduct "can be characterized as 'wanton' depends upon the constraints facing [him].")  Specifically, Defendants assert that they were

unable to deviate from the set shower schedule in DSU because of the influx of the 35 inmates involved in the underlying incident and restrictions in DSU. First Hoffman Decl. Ex. 1 at 9. Defendant Gilmore indicated that Plaintiff received a shower "at the institution's earliest convenience." First Hoffman Decl. Ex. 9. In short, while Defendants may have been on notice that Plaintiff was suffering from the effects of the pepper spray, *see* Am. Compl. at 5–7, a reasonable jury could find that Defendants did not act with deliberate indifference in denying Plaintiff a shower. Summary judgment is therefore inappropriate in this case.

## II.     Defendants' Partial Motion for Summary Judgment

Defendants also move for summary judgment on the claims against Defendants Blevins, Bell, Gilmore, Peters, and Jones, arguing these Defendants should be dismissed from this case because Plaintiff has not demonstrated that they were personally involved in the alleged constitutional deprivation.[2] Def. Mot. Summ. J. 3–4. "In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation[.]" *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). Thus, "there is no respondeat superior liability under § 1983. Rather, a government official may be held liable only for the official's own conduct." *Maxwell v. Cty. of San Diego*, 708 F.3d 1075, 1097 (9th Cir. 2013). "A supervisor may be liable if there exists *either* (1) his or her personal involvement in the constitutional deprivation, *or* (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (citing *Thompkins v. Belt*, 828 F.2d 298, 303–04 (5th Cir. 1987)) (emphasis added). "'The

---

[2] Defendants make additional arguments in support of their motion for summary judgment, including Eleventh Amendment immunity and qualified immunity. But because Plaintiff has failed to show that Defendants Blevins, Bell, Gower, Gilmore, Saxton, Peters, and Lo were personally involved in the alleged constitutional deprivation, the Court declines to reach the remainder of Defendants' arguments.

requisite causal connection can be established . . . by setting in motion a series of acts by others or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury.'" *Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (quoting *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)).  Thus, "[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Starr*, 652 F.3d at 1208 (quoting *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)).  In addition, "[s]upervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446–47 (9th Cir. 1991), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1994).

Here, Plaintiff asserts that he is not alleging that Defendants Bell, Gilmore, or Peters (the "Supervisory Defendants") had personal involvement in the underlying constitutional violations. Pl. Resp. Def. Mot. Summ. J. 1–2, ECF 44. Rather, he contends, the Supervisory Defendants "knowingly implement [sic] a deficient policy for decontamination of chemical agents in which denied Plaintiff a shower for over 48 hours when the supervisors were put on notice in (2002)." *Id.*  Plaintiff cites a prior lawsuit against SRCI "FOR THE EXACT SAME THING." *Id.* at 9 (citing First Hoffman Decl. Ex. 2 at 5–6). From this, Plaintiff suggests that the Supervisory Defendants should have been aware of an unconstitutional policy or custom implemented by their subordinates. *Id.* Plaintiff also contends that the holding of *Clement* constituted "notice" to the Supervisory Defendants that "denying an inmate a shower who has been contaminated by

chemical agents for 4 hours was ruled unconstitutional." Pl. Resp. Def. Mot. Summ. J. 2. The heart of Plaintiff's argument, therefore, appears to be that the Supervisory Defendants knowingly failed to adequately train and supervise their staff, thus allowing the officers in this case to "directly violate law established in *Clement*." *Id.* at 2.

Here, however, Plaintiff presents insufficient evidence that the Supervisory Defendants are liable for deliberate indifference. Plaintiff has offered no evidence that these Defendants were personally involved with the alleged constitutional violation or had knowledge of the alleged violation and failed to take action to stop it. While *Clement* may provide the requisite notice that the failure to decontaminate a prisoner after exposure to pepper spray could constitute a violation of a prisoner's constitutional rights, it does not demonstrate that the prison officials here were on notice that Defendant's rights were being violated or that the officers in question customarily disallowed showers. And in *Clement*, the plaintiffs' submissions recited numerous uses of pepper spray that had allegedly harmed bystander inmates such that supervisory liability could have existed because of a deficient policy. 298 F.3d at 905 ("A factfinder may find that the policymakers and supervisors were on actual or constructive notice of the need to train."); *see also Starr*, 652 F.3d at 1216 (where the county sheriff received reports of inmate deaths and injuries related to ongoing culpable actions by his subordinates and failed to take corrective action to protect inmates, the plaintiff had plausibly alleged that the sheriff had acquiesced to the unconstitutional conduct of his subordinates and was therefore deliberately indifferent to the danger posed to the plaintiff). By contrast, here, Plaintiff cites one lawsuit that was ongoing at the time of this incident. The record reveals only that ODOC was "in the middle of a civil suit with an inmate at SRCI for the exact same thing" and that "without admitting liability [ODOC] settled two cases for $27,000 with an inmate who alleged that he had been sprayed with a

chemical agent and was not allowed a shower upon request." First Hoffman Decl. Ex. 2 at 5–6. Without further information, this suit does not—on its own—establish the requisite knowledge of a constitutional violation to establish supervisory liability in this case.

Plaintiff otherwise fails to provide any evidence to support his allegations that Defendants failed to discipline or adequately train and supervise officers with the proper policies, procedures, or administrative rules. Rather, as described above, the evidence suggests that the officers followed prison policies and administrative rules following Plaintiff's exposure to OC spray. *See supra* Section I. And Plaintiff does not argue that the policies in place at the time were unconstitutional. Because there is no dispute of material fact about the lack of Defendants' personal involvement in the underlying claims, summary judgment is granted to Defendants Bell, Gilmore, and Peters.

As to Defendants Blevins and Jones, the Court finds that summary judgment is appropriate only as to Defendant Blevins. Defendant Blevins states that she was in the control room in the DSC and then assigned paperwork related to influx of inmates into the DSU during the period in question. Blevins Decl. ¶ 5. Plaintiff concedes that Defendant Blevins had no personal involvement in this case. Pl. Resp. Def. Mot. Summ. J. 2.  By comparison, there is an issue of fact over whether Defendant Jones was personally involved in the alleged Eighth Amendment violation. Unlike Defendant Blevins, Defendant Jones was working as floor staff in DSC on July 28. Jones Decl. ¶ 6, ECF 41. Though Defendant Jones does not recall "having much interaction with [Plaintiff]" or Plaintiff asking Defendant Jones for a shower, *id.*, Plaintiff contends that on July 28, 2016, he asked Defendant Jones if he could shower because he was suffering from the effects of the OC spray, Am. Compl. at 7. Accordingly, the Court denies Defendants' motion to dismiss Defendant Jones from this case.

**CONCLUSION**

The Court DENIES Plaintiff's Motion for Summary Judgment [34] and GRANTS in part and DENIES in part Defendants' Motion for Partial Summary Judgment [38]. Defendants Bell, Gilmore, Peters, and Blevins are dismissed from this case.

IT IS SO ORDERED.

Dated this _____16_____ day of _____Sept_____, 2019.


_____
MARCO A. HERNÁNDEZ
United States District Judge